IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

SPARTANBURG DIVISION

| | |
|---|---|
| Thomas Hunter Floyd, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>Management Analysis & Utilization, Inc.,)<br>)<br>Defendant. )<br>_____) | Civil Action No. 7:13-1971-JMC-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

   This matter is before the court on the defendant's motion to dismiss (doc. 5). Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Civil Rule 73.02(B)(2)(g) DSC, this magistrate judge is authorized to review all pretrial matters in employment discrimination cases and submit findings and recommendations to the district court.

   The plaintiff filed this action in the Court of Common Pleas, Seventh Circuit, Spartanburg, South Carolina on May 31, 2013. On July 17, 2013, it was removed to federal court. On that same date, the defendant filed the instant motion to dismiss (doc. 5). The plaintiff filed a response in opposition to the motion to dismiss (doc. 14) on August 12, 2013, and the defendant filed a reply (doc. 21) on August 22, 2013. The plaintiff's complaint alleges three causes of action against his former employer: violation of the Family and Medical Leave Act, 29 U.S.C.A. § 2601, *et seq*. ("FMLA"), breach of implied contract, and breach of implied covenant of good faith and fair dealing. The defendant has moved for dismissal of all three claims.

## FACTS PRESENTED

   The defendant hired the plaintiff in November 2010 and assigned him to a position in the paint shop at BMW Manufacturing Co. LLC (comp. ¶¶ 9, 11-12). "[O]n or about March 30, 2012, [the plaintiff] injured his ankle in an accident away from work" (*id.* ¶ 13). The plaintiff informed the defendant of his injury, and the defendant's Human

Resources Department advised him that he could request FMLA leave to prevent him from accruing unexcused absences (*id.* ¶ 14).  The plaintiff completed the FMLA paperwork he received from the defendant on March 30, 2012, and submitted it to the Human Resources Department (*id.* ¶ 15).  The plaintiff subsequently asked the defendant if there was anything else he needed to do regarding his FMLA request, and the defendant advised him that nothing else was needed (*id.* ¶ 17).

The plaintiff was out of work due to his ankle injury the week of April 2 to April 6, 2012 (comp. ¶ 20).  The plaintiff returned to work on April 9, 2012 (*id.*).  Approximately two weeks later, the defendant attempted to terminate the plaintiff for "excessive absences" (*id.* ¶ 21).  Before the plaintiff was terminated, his BMW manager, Toinette Thrower, advised the defendant that the plaintiff had communicated with her regarding his ankle injury and that he had previously submitted an FMLA leave request (*id.*).

Approximately one week later, the defendant advised the plaintiff that there was no record of his FMLA request and that he needed to submit another request (comp. ¶ 22).  Thereafter, the plaintiff completed a second FMLA leave request and submitted it to the defendant (*id.* ¶ 23).  Approximately one month later, the defendant advised the plaintiff that he needed to provide a doctor's note for his absences in order for the missed days of work not to count against his attendance record (*id.* ¶ 24).  The plaintiff then scheduled an appointment with his physician concerning his ankle injury (*id.* ¶ 25).  During the appointment, the plaintiff's doctor advised him that he "could not write an excuse covering the missed days of work since [he] had not reported to him earlier" (*id.* ¶ 25).  Thereafter, the defendant terminated the plaintiff for excessive absences (*id.* ¶ 26).

## APPLICABLE LAW AND ANALYSIS

The defendant argues that the plaintiff's causes of action should be dismissed for failure to state a claim.  This court agrees.  Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal if the opposing party fails to state a claim for which relief can be granted.  Rule 8(a) sets forth a liberal pleading standard, which requires only a " 'short and plain statement of the claim showing the pleader is entitled to relief,' in order

2

to 'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "[T]he facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. American Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 569). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

While a complaint "does not need [to allege] detailed factual allegations," pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show [n]'—'that the pleader is entitled to relief.' " *Id*. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). When determining a motion to dismiss pursuant to Rule 12(b)(6), the court must take all well-pled material allegations of the complaint as admitted and view them in the light most favorable to the non-moving party. *De Sole v. U.S.*, 947 F.2d 1169, 1171 (4th Cir. 1991) (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)).

***FMLA***

Under the FMLA, an eligible employee is entitled to up to 12 weeks of unpaid leave per year for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA provides: "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." *Id.* §

3

2615(a)(1).  To establish an FMLA interference claim as alleged by the plaintiff here,[1] an employee must show that:  "(1) he was an eligible employee; (2) his employer was covered by the Act; (3)  he was entitled to leave under the FMLA; (4)  he gave his employer adequate notice of his intention to take leave; and (5)  the employer denied him FMLA benefits to which he was entitled." *King v. Blanchard Machinery Co.*, C.A. No. 3:10-3219-MBS, 2012 WL 4586177, at *5 (D.S.C. Sept. 28, 2012) (citing *Rodriquez v. Smithfield Packing Co.*, 545 F. Supp. 2d 508, 516 (D. Md. 2008)).

The defendant argues that the plaintiff cannot meet the third element as matter of law.  The third element - entitlement to leave under the FMLA - stated differently is that the plaintiff must state that he has a serious health condition as defined by the FMLA "because otherwise [he] [would] not have any right under the Act with which [his] employer could have interfered. *Rhoads v. FDIC*, 257 F.3d 373, 384 (4th Cir. 2001).  A serious health condition for purposes of the FMLA is defined in the regulations as "an illness, injury, impairment or physical or mental condition that involves inpatient care as defined in § 825.114 or continuing treatment by a health care provider as defined in § 825.115." 29 C.F.R. § 825.113(a).  Continuing treatment is defined as a period of incapacity of more than three consecutive days and either:  (1) treatment (in-person) two or more times by a health care provider, within 30 days of incapacity, unless extenuating circumstances exist; or (2) at least one occasion of treatment by a health care provider that results in a regimen of continuing treatment by a health care provider. *Id.* § 825.115(a).  The first (or only) in-person treatment visit must take place within seven days of the first day of incapacity. *Id.*  "The term incapacity means inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." *Id.* § 825.113(b).

---

[1]The plaintiff alleges that the defendant failed to provide him notice as required by the FMLA (comp. ¶ 30). *See* 29 C.F.R. § 825.300 (setting forth employer notice requirements). "Any violations of the [FMLA] or of [its governing] regulations constitute interfering with ... the exercise of rights provided by the [FMLA]." *Id.* § 825.220(b).

According to the allegations in the complaint, the plaintiff's injury occurred on March 30, 2012, and his first date of absence from work was April 2, 2012 (comp. ¶¶ 13,19). The defendant advised the plaintiff in late May 2012 that he needed to provide a doctor's note, at which time the plaintiff scheduled an appointment and met with his physician (id. ¶¶ 24-25). When the plaintiff met with his doctor in May 2012, his doctor advised him that he could not provide him with an excuse covering the missed days of work (April 2-6, 2012) because the plaintiff had not reported to him earlier (id. ¶ 25). Because the plaintiff did not see a healthcare provider within seven days of April 2, 2012, he cannot satisfy the requirements of 29 C.F.R. § 825.115. Furthermore, there is no allegation that he received treatment from a healthcare provider two or more times within 30 days of April 2nd, nor did he seek treatment on at least one occasion, resulting in a regimen of continuing treatment by a healthcare provider. See 29 C.F.R. § 825.115. Accordingly, the plaintiff cannot state a claim for relief because he did not have a serious health condition as required to be protected under the FMLA.

In Henderson v. Nutrisystem, Inc., 634 F.Supp.2d 521 (E.D. Pa. 2009), the plaintiff alleged that she was unlawfully denied FMLA leave because her employer ignored her requests for leave and failed to send her an FMLA leave request form. The plaintiff in Henderson first reported that she was ill on January 7, but she did not see a doctor until January 22. Because the plaintiff did not seek treatment from a healthcare provider within seven days from the first day of her claimed incapacity, the court held that she failed to establish that she had a serious health condition and, therefore, was not entitled to the protections of the FMLA. Id. at 537-38.

Similarly, in Johnson v. Dollar General, 880 F.Supp.2d 967 (N.D. Iowa 2012), the plaintiff was absent from work from April 30, 2009, until May 6, 2009. The plaintiff, however, could not show that he had received continuing treatment by a healthcare provider because he failed to present evidence that he had an in-person visit to his doctor within seven days of the first day of incapacity. Accordingly, the court found that the plaintiff failed

to establish that he suffered from a serious health condition and, therefore, he could not pursue an interference claim under the FMLA. *Id.* at 984-87.

The plaintiff argues that because the defendant did not inform him that he needed a note from his doctor to qualify for FMLA leave until one month after he resubmitted his request for FMLA, the defendant violated its notice requirements under the FMLA (pl. resp. m.s.j. at 5-6 (citing 29 C.F.R. § 825.300)). The plaintiff further argues that if the defendant had fulfilled its notice obligations, he likely would be able to show that he had a serious health condition (*id.*).

While the FMLA does require employers to provide written notice detailing certain expectations and obligations of the employee, *see* 29 C.F.R. § 825.300(c), the FMLA does not require that an employer advise employees how often they must go to a doctor, when they have to go to a doctor, or what type of treatment should be provided so that the illness or injury will qualify as a serious health condition for FMLA leave purposes. The FMLA does not require an employer to obtain a medical certification in connection with a request for leave. However, if an employer elects to require an employee seeking FMLA leave to provide a medical certification, the employer must give the employee notice of that requirement. 29 C.F.R. § 825.300(c)(1)(ii). However, as argued by the defendant, the plaintiff has misconstrued an employer's discrete obligation of providing notice of a requirement for a medical certification with an obligation to inform an employee that "medical leave" necessarily means seeking medical treatment. Whether a medical certification is requested or required by an employer has nothing to do with whether an eligible employee[2] has a serious health condition that qualifies for FMLA leave.

As the plaintiff has failed to allege facts showing that he had a serious health condition, his claim against the defendant for violation of the FMLA should be dismissed.

---

[2]The FMLA defines an "eligible employee" as (1) one who has been employed by the employer for at least 12 months, (2) has been employed for at least 1250 hours during the 12 month period immediately preceding the commencement of the leave, and (3) is employed at a worksite where 50 or more employees are employed by the employer within 75 miles of that worksite. 29 C.F.R. § 825.110(a)(1), (2), and (3).

*Rhoads*, 257 F.3d at 384 ([T]he district court correctly required [the plaintiff] to prove that she was afflicted with an FMLA-qualifying condition, because otherwise she did not have any right under the Act with which her employer could have interfered.").

**Breach of Implied Contract**

In the plaintiff's second cause of action, he alleges that the defendant's Employee Handbook constituted a binding contract and that the defendant breached the contract by violating Sections 3.9, 3.15, and 7.6 (comp. ¶¶ 34, 36).  In South Carolina, employment is presumed to be at-will, which means that an employee may be terminated at any time for any reason or for no reason, with or without cause. *Hessenthaler v. Tri-County Sister Help, Inc.*, 616 S.E.2d 694, 697 (S.C. 2005) (citing *Styles v. Am. Gen. Life Ins. Co.*, 516 S.E.2d 449, 450 (1999)).  Although South Carolina courts have recognized that an employee's at-will status may be altered by the terms of an employee handbook, Section 41–1–110 of the South Carolina Code expressly provides that a handbook "shall not create an express or implied contract of employment if it is conspicuously disclaimed." S.C. Code Ann. § 41–1–110.  In accordance with the provisions of the disclaimer statute, a handbook is conspicuously disclaimed if the disclaimer is "in underlined capital letters on the first page of the document and signed by the employee." *Id*.

Although the plaintiff did not attach a copy of the defendant's Employee Handbook to the complaint, he specifically referred to the Employee Handbook and listed three provisions in the handbook that he claims were breached by the defendant (comp. ¶¶34-36).  For purposes of considering a motion to dismiss for failure to state a claim, a court may consider "documents attached or incorporated into the complaint" without converting the motion to dismiss into a motion for summary judgment. *E.I. du Pont de Nemours and Co. v. Kolon Indus, Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).  Further, "when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" *American Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting

7

*Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).  Because the plaintiff expressly relied on the defendant's Employee Handbook in his complaint and made reference to specific provisions in it, the defendant submitted as an exhibit to its motion to dismiss a template copy of the Employee Handbook (def. m. to dismiss, ex. 1).  The disclaimer is on the cover of the handbook, it is in all capital letters in a bordered box, and it contains a signature line on which the defendant's employees place their signature upon receipt (*id.*).

   In response to the motion to dismiss, the plaintiff argues that because the defendant "did not attach a copy of any alleged signature page where Plaintiff may have signed the disclaimer notice as required by S.C. Code Ann. § 41-1-110," the defendant "does not meet the statutory requirements . . . so as to overcome the allegations of breach of implied contract and breach of implied covenant of good faith and fair dealing" (pl. resp. m. to dismiss 6-7).

   In reply, the defendant notes that the plaintiff has raised the issue of who is in possession of the Employee Handbook containing the signed disclaimer.  The defendant has submitted as an exhibit to its reply an Employee Handbook Acknowledgment form signed by the plaintiff acknowledging that he received a copy of the Employee Handbook (def. reply, ex. 1).  The Acknowledgment expressly provides in relevant part as follows:

> 2. I agree that I am an associate at-will.
>
> I am an associate at-will, and my employment with the Company is for an unspecified period of time. I am free to leave my employment with the Company at any time, for any reason. The Company is also free to terminate my employment at any time, for any reason.
>
> 3. **I understand that the Associate Handbook is not an employment contract.**

> I understand that the Associate Handbook is not an employment contract. I agree that the provisions of the Associate Handbook are guidelines, procedures, and statements of policy, which may be changed by the Company at any time without my consent. At the time I was hired, no representative of management said anything to me which led me to believe otherwise, or which I believe was intended to change the at-will nature of my employment relationship with the Company.

*Id.* (emphasis in original).  Accordingly, the defendant argues that in light of the plaintiff's signature on the Employee Handbook Acknowledgement, he had actual knowledge that his employment was at-will, and he cannot argue that the Employee Handbook constitutes a contract of employment. *See Anthony v. Atlantic Group, Inc.*, 909 F.Supp.2d 455, 466 n.14 (D.S.C. 2012) ("Where it is uncontroverted that Plaintiff possessed actual knowledge regarding the language specifically providing that the handbook does not change that relationship, Plaintiff cannot…credibly argue that the employee handbook constitutes a contract of employment.").

The defendant further argues that the plaintiff's implied contract cause of action fails to state a claim because he has failed to plead that the Employee Handbook contains mandatory language establishing a contract of employment.  In order to survive a Rule 12(b)(6) motion to dismiss on a claim for breach of a contract of employment, "a plaintiff 'must plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship . . . .'" *Perrine v. G4S Solutions (USA), Inc.*, C.A. No. 2:11-1210-RMG, 2011 WL 3563110, at *1 (D.S.C. Aug. 9, 2011) (quoting *Amason v. P.K. Management, LLC*, C.A. No. 10-1752-JFA, 2011 WL 1100169, at *6 (D.S.C. March 23, 2011)).  In *Anthony*, the court explained that in order "[t]o qualify as mandatory language sufficient to establish an implied contract for employment, the policy manual language 'must be definitive in nature, promising specific treatment in specific

9

situations'." *Anthony*, 909 F.Supp.2d at 467 (quoting *Hessenthaler v. Tri-County Sister Help, Inc.*, 616 S.E. 2d 694, 698 (S.C. 2005).

   The plaintiff cites Sections 3.9, 3.15, and 7.6 of the Employee Handbook as having been breached by the defendant (comp. ¶¶ 34, 36). Sections 3.9 *Medical Statements* and 7.6 *Leave Under the FMLA* simply reaffirm that the defendant will comply with its legal obligations under the FMLA (def. m. to dismiss, ex. 1). These types of policy statements do not constitute contractual agreements for which a company may be sued for breach, as they do not contain promissory language that alters the at-will employment relationship. As the South Carolina Supreme Court held in *Hessenthaler*, a nondiscrimination provision stating that the employer will not discriminate does not constitute a promise altering the at-will relationship and giving rise to a breach of contract claim. *Hessenthaler*, 616 S.E.2d at 698-99 ("Unlike a mandatory, progressive discipline procedure, a general policy statement of nondiscrimination does not create an expectation that employment is guaranteed for any specific duration or that a particular process must be followed before an employee may be fired."). The final handbook provision that the plaintiff claims the defendant breached is Section 3.15 *Job Abandonment* (def. m. to dismiss, ex. 1). This provision states that employees who fail to report to work for three consecutive days without notifying the BMW MC Section Leader and the defendant's Absentee Line will be presumed to have resigned and will be terminated (*id.*). The policy also states that employees who walk off the job without notifying the defendant and the MAU and the BMW MC Section Leader will be considered to have voluntarily resigned (*id.*). As argued by the defendant, there is no mandatory language in that provision restricting the defendant's right to discharge employees. *See also Storms v. Goodyear Tire & Rubber Co.*, 775 F. Supp. 862, 867 (D.S.C. 1991) (language in the agreement is insufficient to form a contract when it is "not couched in mandatory terms and does not contain language that specifically limits the employer's right to demote or terminate . . . without cause.").

   Based upon the foregoing, the undersigned finds that the plaintiff's breach of implied contract cause of action should be dismissed for failure to state a claim because

the Employee Handbook was conspicuously disclaimed and because the provisions of the Employee Handbook cited by the plaintiff in the complaint do not establish a promise altering the at-will employment relationship and giving rise to a breach of contract claim.

**Breach of Implied Covenant of Good Faith and Fair Dealing**

The plaintiff alleges in his third cause of action that the defendant "owed [him] a duty of good faith and fair dealing and implicitly covenanted to refrain from doing anything to impair his rights pursuant to the provisions of the Employee Handbook for Production and Physical Logistics Associates at Client Site, BMW MC" (comp. ¶ 40).  A cause of action for breach of implied covenant of good faith and fair dealing cannot be recognized absent proof of an underlying contract.  *Dodgens v. Kent Mfg. Co.*, 955 F. Supp. 560, 567 (D.S.C. 1997). In light of the court's previous finding on the breach of implied contract claim, the plaintiff's claim for breach of the implied covenant of good faith and fair dealing should also be dismissed.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, this court recommends that the defendant's motion to dismiss (doc. 5) be granted.  The defendant's request that the court award attorney fees and costs associated with the motion should be denied.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

January 13, 2014
Greenville, South Carolina

11